IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMY D. TOWLES,

       Plaintiff,

vs.                                                                                 No.  06cv0699 DJS

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Towles') Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 10]**, filed December 15, 2006, and fully briefed on February 13, 2007.  On February 9, 2006, the Commissioner of Social Security issued a final decision denying Towles' claim for disability insurance benefits.  Towles seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

### I.  Factual and Procedural Background

Towles, now forty-three years old (D.O.B. April 30, 1964), filed her application for disability insurance benefits on February 14, 2003 (Tr. 55), alleging disability since November 5, 2000 (Tr. 55), due to osteoarthritis of the knees, fibromyalgia, deterioration of the lower spine,

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

foot pain and depression. Tr. 14. Towles' insured status for disability insurance benefits expired on December 31, 2004. Thus, Towles must establish that she was disabled on or before that date. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993). Towles has a twelfth grade education and past relevant work experience as a telephone operator, healthcare homemaker, and childcare worker. Tr. 72. On February 9, 2006, the ALJ denied benefits, finding Towles was not disabled. Tr. 20. Towles filed a Request for Review of the decision by the Appeals Council. On June 27, 2006, the Appeals Council denied Towles' request for review of the ALJ's decision. Tr. 5. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Towles seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting her decision, the ALJ must

discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Towles makes the following arguments: (1) the ALJ's RFC finding is unsupported by substantial evidence and legally erroneous; (2) the ALJ's step five determination that she can perform three jobs existing in significant numbers is unsupported by substantial evidence and legally erroneous; (3) the ALJ's credibility determination is unsupported by substantial evidence and legally erroneous; and (4) the record on appeal is incomplete.

## A.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence she relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider her personal observations of the claimant in her overall evaluation of the claimant's credibility. *Id.*

Additionally, in evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The inability to work

4

pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

In her decision, the ALJ found:

Insofar as Ms. Towles has impairments that more than minimally affect work activity, I find her assertions are credible. Her assertions as to the limitations they impose, however, are not entirely credible. First, I note that the Claimant told a new provider in October [30,] 2000 that she had rheumatoid arthritis [Exh. 2f/12]. There is no evidence that any doctor ever made this diagnosis. However, her doctor tried to refer her for a rheumatology consult which she declined [**Exh. 2F/3, 8**].

Ms. Towles appeared at hearing wearing an elbow brace on her right (dominant) side. She acknowledged that her doctor did not prescribe it, but that he told her that anything that helps is "OK". She testified that by wearing the elbow brace, the pain that shoots down to her hand subsides, so that she can use her arm and lift things with her hands. Ms. Towles was also using a cane to walk. She testified that she has used a cane off and on for a while, but all the time since January 2005. She acknowledged that her doctor did not prescribe it. She testified that her most limiting conditions are fibromyalgia and arthritis in her knees. According to Ms. Towles, she cannot sit or stand too long because she is in constant pain. She estimated that she could sit only 20 minutes and stand no more than 5 minutes. Furthermore, Ms. Towles testified that she has pain in her elbows, hands, toes, and feet. Medications include Flexeril, Bextra, amitriptylene, and Percocet on an "as needed" basis, and Prilosec for acid reflux, which is controlled. I note that on September 27, 2004, she told her physician that her prescription percocet, 90 pills, had lasted since December the previous year [Exh. 15F/6]. Furthermore, she reported that her regular medication, "keeps pain controllable tho [sic] still present every day" [Id.].

Tr. 17-18 (emphasis added). Contrary to the ALJ's assertion, Towles was diagnosed with seronegative rheumatoid arthritis. *See* Tr. 128-129 (October 30, 2000– diagnosed by S.E. Smith, M.D. (Dr. Khalsa) with Seronegative rheumatoid arthritis with referral to Dr. Fredrica Smith (Tr. 129); Tr. 142 (October 20, 2000– seen by Dr. Fredrica Smith & blood work ordered); Tr. 138 (November 20, 2000– evaluated by Fredrica Smith, M.D. and diagnosed as "may have seronegative RA"); Tr. 126 (February 26, 2001– Dr. S.E. Smith (Dr. Khalsa) ("Rheumatoid arthritis . . . f/u with rheumatology R/O (rule out) mixed connective tissue disorder); Tr. 122

5

(May 10, 2001– Dr. S.E. Smith (Dr. Khalsa) – "Rheumatoid arthritis . . . still hasn't gotten an appointment with rheumatologist").

Thus, the record does not support the grounds for the ALJ's credibility determination. First, Towles' treating physician had informed her she had rheumatoid arthritis. Second, Towles never declined a consultation by a rheumatologist. Moreover, the ALJ misconstrued Exhibit 2F/3. On February 26, 2001, Dr. S.E. Smith (Dr. Khalsa) directed Towles <u>to return</u> to her rheumatologist to rule out a "mixed connective tissue disorder." Tr. 126. On May 10, 2001 (Exhibit 2F/3), Dr. S.E. Smith (Dr. Khalsa) noted Towles had not yet made an appointment with the rheumatologist. Tr. 122. The ALJ also misconstrued Exhibits 2F/8 and 15F/6. On January 24, 2001 (Exhibit 2F/8), Towles reported to Dr. S.E. Smith (Dr. Khalsa) that she "would like a different specialist for rheumatoid arthritis, displeased with other one . . . ." Tr. 127. As to Exhibit 15F/6, although the ALJ noted Towles' "percocet prescription had lasted since December of the previous year,"the ALJ failed to consider that Towles' also reported taking Vioxx (used in the treatment of rheumatoid arthritis or acute pain) and flexeril (muscles relaxant) every day. Moreover, even though Towles was taking Vioxx and flexeril every day, she also reported the pain was present every day.

Thus, while it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *Thompson*, 987 F.2d at 1490. When the ALJ's credibility determination is not supported by substantial evidence, as in this case, a remand is required. *Kepler,* 68 F.3d at 391-92.

**B.  RFC Determination**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion.  See SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.*  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.*

Towles contends the ALJ's RFC finding fails to comply with Social Security Ruling 96-8p because the ALJ failed to consider all her severe and non-severe impairments in assessing her RFC.  Pl.'s Mem. in Support of Mot. to Reverse at 17.  Specifically, Towles contends the ALJ failed to consider her diagnoses of rheumatoid arthritis and fibromyalgia.  Towles also contends the ALJ's findings concerning her obesity are unsupported.  Towles contends the evidence does not support the ALJ's finding that she failed to comply with treatment prescribed by her treating physicians.  Moreover, Towles contends the ALJ failed to comply with Social Security Ruling 02-1p which sets forth rules for evaluating the failure to follow prescribed treatment in obesity cases.  Finally, Towles contends the ALJ erred in finding she did not suffer significant manipulative

7

limitations. Towles argues the ALJ's failure to recognize her diagnoses of rheumatoid arthritis and fibromyalgia tainted the ALJ's analysis of her reports of upper extremity problems. *Id.* at 20.

In her decision, the ALJ noted:

> As to her physical impairments, the record shows that Ms. Towles carries diagnoses of morbid obesity [Exh. 15F/3], degenerative joint disease in the knees and feet [Exh. 15F at 1 and 16], **"probable"** fibromyalgia with a history of chronic arthralgias [Exh. 3F/1], and degenerative disc disease of the lumbar spine at L4-L5. Whether each of Ms. Towles' musculoskeletal impairments is discretely severe is questionable. However, I have considered these impairments in combination with each other and with Ms. Towles' morbid obesity, which one physician opined is discretely severe [Exh. 4F at 4]. I agree, but I also conclude that the combined effect of these conditions "more than minimally" limits her ability to engage in basic exertional work, including weight-bearing activities. Therefore, Ms. Towles has one or more severe impairments, as well as severe combination of impairments.
>
> ** ** ** ** ** **
>
> Ms. Towles testified that she is 5'1" and weights 270 pounds. This is consistent with the medical evidence. Furthermore, she acknowledged in testimony that her physician said weight loss would alleviate some of her joint problems. The record is chocked-full of progress notes from her doctors, indicating that they discussed her weight extensively with her (*See*, Exhs. 2F/10, 3F/3-4, 15F/2, 15F/11). Indeed, the X-ray reports of her back and knees show only "probably mild-to-moderate degenerative change at only one level in her lumbar spine (L4-L5), with no central or neuroforaminal narrowing [Exh. 15F/20]. Such findings hardly constitute severe degenerative changes; however, even minor defects in these joints are likely to be magnified because of the unduly heave weight they bear. Dr. Smith diagnosed ligament strain of the knee secondary to obesity [Ex. 3F/3].
>
> Ms. Towles' doctor referred her to Dr. Perry for what appears to be psychotherapy specifically directed toward weight loss. Key in Dr. Perry's strategy, as well as Ms. Towles' primary care physicians' strategy, was an exercise program. Included in their suggestions were walking [Exh. 15F/11], bicycling, and swimming [Exh. 15F/9]. Dr. Smith noted that swimming facilities were available [Exh. 3F/1]; however, there is no indication that Ms. Towles availed herself of them. Dr. Smith noted that Ms. Towles had a reclining bicycle she could use [3F/4]; however, the record is devoid of evidence of follow-through. Moreover, Ms. Towles' continued morbid obesity evidences lack of follow-through. No physician opined Ms. Towles has a constitutional inability to lose weight.
>
> I suspect that Ms. Towles' **presumed** fibromyalgia would also remit significantly were she to lose a lot of weight. Regardless, however, I note that her primary care physician tried on more than one occasion to refer her to a rheumatologist, who presumably would be the one to make a diagnosis, after ruling out other possible diagnoses. Ms. Towles told her doctor she didn't want to see a rheumatologist. [Exh. 15F/2, *see also* 15F/9-10]. Therefore, she foreclosed the possibility of a more accurate diagnosis and specialized treatment. This, and failure to lose weight, appear to be the source of most of her symptoms.

Tr. 16, 18-19 (emphasis added).  The Court has reviewed the record and finds that the ALJ's RFC is not supported by substantial evidence.  First, Dr. Fredrica Smith, a rheumatologist, evaluated Towles and diagnosed her with fibromyalgia.  Tr. 136 (October 22, 2001 visit with Dr. Fredrica Smith- "[El]bows are tender over the epicondyles, consistent with trigger points.  There is diffuse tenderness over the entire neck and back, not well localized.  She has trigger points in very typical fibromyalgia locations.  Diagnoses: Arthralgias, **Fibromyalgia**, Hx of back problems, Morbid obesity with significant weight gain.").  Thus, Towles' had a definitive diagnosis of fibromyalgia by a rheumatologist.  An ALJ may not substitute her own opinion for a medical opinion.  *See Sisco*, 10 F.3d at 744.  It is evident from the ALJ's decision that she questioned whether Towles suffered from fibromyalgia.  The ALJ also erroneously found Towles refused to see a rheumatologist.  These erroneous conclusions coupled with the ALJ's rejection of Towles' diagnosis of rheumatoid arthritis affected the ALJ's RFC determination.  On remand, the ALJ must consider Towles rheumatoid arthritis and her fibromyalgia.  Specifically, the ALJ must consider the subjective symptoms of fibromyalgia, keeping in mind the lack of objective symptoms.   As the Tenth Circuit recently noted:

> What makes fibromyalgia difficult to analyze in the social security disability context is the lack of objective symptoms:
>
> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are pain all over, fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.
>
> Of course, the difficulty of analyzing the effect of fibromyalgia is not reason to ignore its presence.

*Brown v. Barnhart*, 182 Fed.Appx. 771, 774 (10th Cir. 2006)(unpublished)(internal citations omitted).  The ALJ should consult with Dr. Fredrica Smith if necessary.  Moreover, on remand, the ALJ should evaluate Towles' morbid obesity pursuant to the dictates of Social Security Ruling 02-1p.  Finally, the medical evidence presented to the Appeals Council should be made part of the record.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)("Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to [the Court's] de novo review."); *see also Martinez v. Barnhart,* 444 F.3d 1201, 1207 (10th Cir. 2006); *Threet v. Barnhart*, 353 F.3d 1185 (10th Cir. 2003).  Because the Court is remanding this action to allow the ALJ to redetermine Towles' credibility and RFC, the Court will not consider Towles remaining allegations of error.

      A judgment in accordance with this Memorandum Opinion and Order will be entered.

 

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**